## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re Miranda Kristin Renfrow, )
)
    Debtor. )
)
_____ )
MIRANDA KRISTIN RENFROW, )
)
    Plaintiff-Appellee, )
)     Case No. 22-cv-00381-SH
v. )
) *Appeal from Adv. Case No. 17-01027-M*
COURTNEY GROGAN, Successor ) *Underlying Bankr. Case No. 17-10385-R*
Trust, Under Trust Agreement dated ) *(Bankr. N.D. Okla.)*
Trust, Under Trust Agreement dated )
March 28, 2002, and ATKINSON, )
HASKINS, NELLIS, BRITTINGHAM, )
GLASS & FIASCO, an Oklahoma )
Professional Corporation, )
)
    Defendants-Appellants. )

### OPINION AND ORDER

Before the undersigned is Defendants-Appellants' unopposed appeal of the bankruptcy court's order denying the parties' *Joint Motion for Indicative Ruling Under Bankruptcy Rule 8008 & to Vacate and Set Aside Judgments* (ECF No. 3-1). Defendants-Appellants have elected to have this matter heard by a district court. (ECF No. 3.) *See* 28 U.S.C. § 158(c)(1); Fed. R. Bankr. P. 8005(a). In accordance with 28 U.S.C. § 636(c), the parties have also consented to proceed before a United States Magistrate Judge. (ECF No. 13.) For reasons explained below, the Court **REVERSES** the bankruptcy court's denial of the motion for indicative relief.

### BACKGROUND

This matter arises from entwined state and federal litigation that has been pending for over six years with no foreseeable chance of timely resolution—absent settlement. In

2016, Grogan[1] filed a lawsuit against Renfrow[2] and her company, Envision,[3] in Tulsa County (the "State Case").[4] (No. 21-cv-228, ECF No. 13-1 at 53-56.[5]) Atkinson Haskins[6] represented Grogan before the state court. (*Id.*) Renfrow is an ophthalmologist, and the State Case initially arose out of debts Renfrow and Envision allegedly owed Grogan from the purchase of Dr. Joe C. Cole's ophthalmology practice.

While the State Case was pending, on March 10, 2017, Renfrow filed a petition for relief under Chapter 7 of the Bankruptcy Code. (No. 21-cv-228, ECF No. 13-4 at 983.) All Renfrow's prepetition debts—and all claims against Renfrow related to prepetition actions—were subsequently discharged.[7] (*Id.* at 985; *see also* No. 21-cv-228, ECF No. 13-1 at 73.) Envision did not seek bankruptcy relief.

Back in the State Case, Grogan amended her petition to add a claim against Renfrow under the Uniform Fraudulent Transfer Act ("UFTA"),[8] alleging Renfrow fraudulently transferred assets away from her creditors <u>after</u> she filed bankruptcy. (No.

---

[1] Defendant-Appellant Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust, under Trust Agreement dated March 28, 2002.

[2] Plaintiff-Appellee Miranda Kristin Renfrow.

[3] Envision Medical & Surgical Eye Care, P.C.

[4] *Courtney Grogan v. Miranda K. Renfrow, et al.*, No. CJ-2016-2033 (Tulsa County, Okla.).

[5] Case No. 21-cv-228-CVE-SH ("No. 21-cv-228") is a related appeal, addressing the merits of the judgment sought to be vacated in the above-captioned appeal. For the sake of background, the Court has taken judicial notice of the filings in that case. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (a court may exercise its discretion to take judicial notice of publicly filed records in its own and other courts on matters that bear directly upon the disposition of the case at hand). All references to pages numbers refer to the page in the ECF file.

[6] Defendant-Appellant Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, an Oklahoma Professional Corporation.

[7] *See* 11 U.S.C. §§ 524 and 727.

[8] Okla. Stat. tit. 24, §§ 112-123.

21-cv-228, ECF No. 13-1 at 86-90.)  While the propriety of what happened in the State Case is the subject of the related appeal, the State Case ended with a jury verdict for Grogan and against Renfrow in the amount of $89,500 (ostensibly for post-petition UFTA violations) and against Envision in the amount of $111,293.75 (for breach of contract). (No. 21-cv-228, ECF No. 13-1 at 350-52.)  The district judge entered a judgment on January 3, 2018, reflecting the amounts awarded by the jury, as well as an additional award against Envision (the "State Judgment").  (No. 21-cv-228, ECF No. 13-2 at 168-69.) Renfrow has appealed that judgment to the Oklahoma Supreme Court, which has stayed the proceedings pending resolution of matters in this Court.  *See* Order, *Grogan v Renfrow*, No. 117,301 (Okla. Dec. 6, 2022).[9]

Because Renfrow believed Defendants-Appellants' actions in the State Case had violated her rights under the discharge, she brought the underlying adversary bankruptcy case, which was tried before then-Chief Judge Dana Rasure roughly a year after judgment was entered in the State Case.  (ECF No. 7-1 at 29.[10])  At the conclusion of the adversary trial, Judge Rasure issued a *Memorandum Opinion*, setting forth her findings of fact and conclusions of law.  (*Id.* at 435-513.)  Judge Rasure (1) concluded the State Judgment was void under 11 U.S.C. § 524(a)(1); (2) ordered Defendants-Appellants to obtain an order vacating the State Judgment and to the dismiss the State Case; and (3) awarded Renfrow $50,000 in damages for emotional distress, $17,306 in damages for her state-court attorney fees, $37,561 in damages for her adversary-proceeding attorney fees, and

---

[9] The State Court appeal proceedings are available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=DF-117301&cmid=124673 (last visited Dec. 14, 2022).

[10] Unlike the record in No. 21-cv-228, the record in the current appeal appears to have additional page notations in the lower right corner.  To be consistent, this opinion will continue to use the page number of the ECF document on file in this Court.

$100,000 in punitive damages.  (*Id.* at 513.)  Judge Rasure then entered the *Judgment*, which reflected her declaratory judgment, mandatory injunction, and award of damages in favor of Renfrow and against Defendants-Appellants.  (*Id.* at 514-15.)  Defendants-Appellants appealed to this Court, which subsequently remanded for reconsideration in light of the Supreme Court decision *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).[11]  (Case No. 19-cv-248-TCK-FHM, ECF No. 40.)  In her *Order on Remand*—relying heavily on the original *Memorandum Opinion*—Judge Rasure affirmed her findings and upheld the original *Judgment*.  (ECF No. 7-1 at 519-38.)  The *Memorandum Opinion*, *Judgment*, and *Order on Remand* are collectively referred to herein as the "Bankruptcy Judgment."

Defendants-Appellants again appealed.  (*See* Case No. 21-cv-228.)  In that appeal, the undersigned found Defendants-Appellants were entitled to a stay of the monetary judgment upon the filing of a supersedeas bond.  (No. 21-cv-228, ECF No. 33.)  The undersigned further found Defendants-Appellants had made a strong showing of a likelihood of success on the merits, as well as other showings, and were entitled to a stay of the injunctive portion of the Bankruptcy Judgment.  (No. 21-cv-228, ECF No. 35.)  Renfrow's objection to that order, as well as the remainder of the merits appeal, remains pending.

As a result, Grogan (on behalf of the trust) has a judgment against Renfrow for $89,500 that the trust cannot currently enforce, and Renfrow has a judgment against Grogan and Atkinson Haskins for $204,867 and injunctive relief that she cannot currently enforce.  All parties actively dispute the validity of the judgments against them and have

---

[11] *Taggart* abrogated the standard on which the bankruptcy court relied in making its civil contempt determination.  *See Taggart*, 139 S. Ct. at 1799.

pending appeals to determine said validity.  Both sets of judgment debtors also assert that the very existence of the judgments against them are doing them a continued harm.

### The Settlement

Without court prompting, and while the above appeals were pending, the parties attended a mediation with a U.S. Chapter 7 Trustee and reached a conditional resolution of all litigation between them.  (ECF No. 12 at 9.)  This settlement is contingent upon vacatur of <u>both</u> the Bankruptcy Judgment and the State Judgment[12] and would also provide Renfrow with additional "financial compensation."  (*Id.*; ECF No. 15 at 11.)

### The Parties' Joint Motion for Indicative Relief

The parties then attempted to effectuate their settlement.  Because Defendants-Appellants' appeal of the Bankruptcy Judgment is still pending, the parties could not simply ask the bankruptcy court to vacate it.[13]  Instead, the parties brought a joint motion for indicative relief under Fed. R. Bankr. P. 8008(a), which states, "[i]f a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because of an appeal that . . . is pending," the court may either defer consideration of the motion, deny the motion, or "state that the court would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a

---

[12] The parties submitted the full settlement agreements to the bankruptcy court for *in camera* review and have made the same submission to this Court.  The undersigned has reviewed the parties' submission and understands that, without vacatur, the settlement agreements will be void, and the parties will continue to litigate the pending appeals of the Bankruptcy Judgment and the State Judgment.

[13] *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *see also Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 254 (B.A.P. 10th Cir. 2006) ("Upon the filing of a notice of appeal, a bankruptcy court loses jurisdiction over all matters within the subject matter of the notice of appeal.").

substantial issue." *Id.* If the bankruptcy court makes the latter finding, the district court may then remand for further proceedings. Fed. R. Bankr. P. 8008(c).

In making their indicative motion, the parties asked the bankruptcy court to vacate the Bankruptcy Judgment pursuant to Fed. R. Civ. P. 60(b)(6), which allows that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." *Id.*; *see also* Fed. R. Bankr. P. 9024 (applying Rule 60 in most bankruptcy cases).

The parties agreed the relief they sought can be appropriate only in "exceptional circumstances." (ECF No. 7-1 at 542 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994), and *Amoco Oil Co. v. U.S. E.P.A.*, 231 F.3d 694, 697 (10th Cir. 2000).) They argued, however, that such "exceptional circumstances" were present in this case—namely that (1) the Bankruptcy Judgment had "limited precedential value given the factual context of the case," the "incorrect legal standard" applied in the *Memorandum Opinion*, and Defendants-Appellants' contention that the *Order on Remand* misapplied *Taggart* and resulted from bias (ECF No. 7-1 at 542-43); (2) settlement "would serve the interests of both parties and judicial efficiency" by saving costs and removing the appeal from this Court's docket and the risk the bankruptcy court might have to retry the case on remand (*id.* at 543-44); (3) the "benefits of vacatur outweigh[ed] any harm the judicial system might suffer from losing legal precedent," as the opinions in the Bankruptcy Judgment were of little precedential value while it and the State Judgment imposed "monumental" harm to the parties by impugning their personal and professional reputations (*id.* at 544); and (4) "settlement is in the best interests of both parties," as it would allow them to "end the protracted litigation" between them and

6

"clear their names and reputations and stop expending significant funds in attorney fees and costs" (*id*. at 545).

### The Hearing Before Judge Michael

The hearing before the bankruptcy court lasted 12 minutes and consisted of attorney argument and Judge's Michael's oral ruling. (*Id*. at 551-62.) At the hearing, the parties reiterated their position that vacatur was proper because the judgments impugned their reputations (with Renfrow's counsel arguing she had to work temporary jobs due to the State Judgment (*id*. at 553)), the case was "taking forever to get through the district court" (*id*.), Defendants' belief that the Bankruptcy Judgment was the result of bias (*id*. at 554), vacatur would serve interests of judicial efficiency (*id*. at 554-55), and the settlement was contingent upon vacatur (*id*. at 555). In response to these arguments, Judge Michael stated:

> I'm not inclined to do this at all.  I wouldn't do it if it was my opinion, and I'll tell you why.  I think it's an extraordinary circumstance, and I think there's another factor here that comes into play that means a lot more to me, quite frankly, Counsel, than your settlement, and that is the scope of the discharge order.
>
> Discharge order is the most important thing we do for a debtor, period . . . .
>
> You wanted the trial, you got the trial, you didn't like the result.  That happens.  Fifty percent of litigants get that every time.  But what troubles me for the system, and I will never sell out the bankruptcy code or its structure for a particular settlement, period, is [the idea] that [] parties can, as has been determined after a full opportunity to be heard in this case, that the discharge injunction has been violated . . . simply buy their way out of it by a settlement after the fact and expunge that violation . . . .
>
> The discharge injunction is more important and its preservation is more important to the bankruptcy system than any particular settlement."

(*Id*. at 559-61.)  Judge Michael then ruled that the motion was denied and indicated he would issue a written order.  (*Id*. at 561.)

### Judge Michael's Decision

The written order that followed was short and summarily found the parties "have established no 'exceptional circumstances' under" *Bancorp* "or its binding progeny within this Circuit[14] to justify vacating any order in this adversary proceeding." (*Id.* at 549.) The bankruptcy court did not discuss any of the parties' specific arguments on how such circumstances existed here. Instead, the court ruled,

> Vacating the Opinion, Judgment, and Order on Remand . . . would foment a harm on the bankruptcy system and is contrary to the public interest as it would send a message to parties found to have taken action in violation of the discharge injunction . . . that they may avoid being held accountable for or for having any record of their actions remain intact as part of a negotiated settlement.

(*Id.*) The bankruptcy court further attempted to look behind the parties' own statements and the plain language of the settlement agreements to find that vacatur of the Bankruptcy Judgment "is a condition of settlement required by the Defendants, not the Plaintiff." (*Id.* at 549 n.3.) Judge Michael also "expressly decline[d] to vacate the findings and conclusions of one of [his] peers," reasoning that "[s]uch matters fall squarely within the province of the appellate courts." (*Id.*) Judge Michael referred to the hearing transcript "to assist parties and any court that may be called upon to review the basis for denial . . . to understand this Court's decision." (*Id.* at 549 n.1.)

### Issues on Appeal

On appeal, the parties raise numerous allegations of error, some tied to the equitable factors set forth in their joint motion and some highlighting particular flaws in the bankruptcy court's reasoning. (*See generally* ECF Nos. 12, 15.) Defendants-

---

[14] Citing *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1120-21 (10th Cir. 2016) and *Amoco Oil*, 231 F.3d at 698. (*Id.* at 549.)

Appellants ask the Court find the bankruptcy court abused its discretion and to remand to the bankruptcy court with instructions to vacate the Bankruptcy Judgment. (ECF No. 12 at 26.) Plaintiff-Appellee supports the appeal and argues this Court "can simply enter an order vacating the Judgments and then dismiss the appeals as moot." (ECF No. 15 at 11 n.25.) For the reasons explained below, the Court finds the bankruptcy court's decision to be an abuse of discretion and that the Bankruptcy Judgment should be vacated.

## ANALYSIS

### I.   Standard of Review

#### A.   *Bancorp* - Vacatur of Judgments after Party Settlement

With any request for vacatur after settlement, consideration must start with *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

In *Bancorp*, the Supreme Court faced the question of whether it should vacate the judgment of the Ninth Circuit Court of Appeals on certiorari, when the decision had been rendered moot by the parties' completed settlement. *Bancorp*, 513 U.S. at 20, 23. The Court distinguished settlement from situations when a case was mooted by either "happenstance" or the "unilateral action of the party who prevailed in the lower court." *Id.* at 23. It found that when mootness is caused by the voluntary action of the losing party (such as settlement), the "losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* at 25 (analogizing this to instances where the losing party fails to appeal at all). As such, the Court concluded that "mootness by reason of settlement does not justify vacatur of a judgment under review." *Id.* at 29. Recognizing that "the determination is an equitable one," however, the Court allowed that "exceptional circumstances may conceivably counsel in favor of" granting vacatur upon party

settlement.  *Id.* (noting "exceptional circumstances do not include the <u>mere</u> fact that the settlement agreement provides for vacatur" (emphasis added)).

In this equitable consideration, the Supreme Court assessed both the private interests of the movant—*i.e.*, whether the movant had demonstrated "equitable entitlement to the extraordinary remedy of vacatur"—and the interests of the public and the federal judiciary.  *Id.* at 26-29.  These interests included the judiciary's interest in maintaining "the orderly operation of the federal judicial system" and preventing parties from "step[ping] off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack" on a judgment, and the public's interest in maintaining judicial precedents, which are presumed correct, valuable to the legal community as a whole, and are not "merely the property of private litigants . . . ."  *Id.* at 26-27.

Moreover, the Supreme Court rejected the movant's argument that vacatur should always be allowed on systemic grounds, as it may facilitate settlement and save judicial resources.  *Id.* at 27-28.  The court noted that while "vacatur may facilitate settlement after the judgment under review has been rendered . . ., it may *deter* settlement at an early stage," as "[*s*]*ome* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur."  *Id.*  The court emphasized that the "judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal."  *Id.* at 28.

In many ways, the circumstances in *Bancorp* are factually distinct from those at issue here.  This Court is not faced with an appeal that has been mooted by a completed settlement; rather, the parties are asking for vacatur to allow a settlement to proceed. Without it, the appeal will continue.  Moreover, unlike *Bancorp*, both parties support

vacatur, and their request comes at the district court level, not after the rendering of a precedential opinion by the court of appeals. Still, numerous courts have applied *Bancorp* outside its original context, and the parties both advocate for the application of factors developed following *Bancorp*. The Court, therefore, treats *Bancorp* as applicable, while noting the effect of these factual differences in its weighing of the relevant factors.

## B.  Application of *Bancorp*

In the decades since *Bancorp*, its equitable considerations have been consistently applied by courts in the Tenth Circuit and beyond to conclude that, absent "exceptional circumstances," mootness of an appeal by reason of settlement generally does not justify vacatur of an underlying judgment. *See, e.g.*, *Amoco Oil*, 231 F.3d at 699 ("granting vacatur to a party who both causes mootness and pursues dismissal based on mootness serves only the interests of that party" and "amounts to a de facto reversal of an abandoned claim"); *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149, 151 (2d Cir. 1998) ("when a judgment is mooted by settlement, vacatur is usually not justified because the social value in preserving precedents is not outweighed by equitable considerations," though "an exception could be made even for settled cases where 'exceptional circumstances' counselled in favor of vacatur").[15]

Such exceptional circumstances have been found to exist several times since *Bancorp* was handed down. *See, e.g.*, *Major League Baseball*, 150 F.3d at 153; *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1332 (11th Cir. 2016);

---

[15] *See also Okla. Radio Assocs. v. F.D.I.C.*, 3 F.3d 1436, 1444 (10th Cir. 1993) (stating, pre-*Bancorp*: "A policy permitting litigants to use the settlement process as a means of obtaining the withdrawal of unfavorable precedents is fraught with the potential for abuse," because "an opinion is a public act of the government, which may not be expunged by private agreement." (quoting *In re Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1300 (7th Cir. 1988))).

*Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 470 (5th Cir. 2020) (en banc); *but see Amoco Oil*, 231 F.3d at 700 (finding no exceptional circumstances); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*, 547 F.3d 109, 114 (2d Cir. 2008) (same).  The decision in any case is not based on blanket policies, but particular circumstances.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1129 (10th Cir. 2010) (reversing order denying vacatur).  Still, there is "a finger on the scale against vacatur," as the court weighs the "silent but important interests not represented in the courtroom." *McKinney v. Philadelphia Hous. Auth.*, No. CIV.A.07-4432, 2010 WL 2510382, at *4 (E.D. Pa. June 16, 2010).[16]

As the parties note, factors courts have considered in making this determination are various, and have included (1) the precedential value of the opinion requested to be vacated—including whether that value is undermined by any change in the law; (2) the interests of party and judicial efficiency; (3) whether both parties—rather than just the loser in the underlying matter—desire vacatur; (4) whether settlement was made contingent upon, rather than in contemplation of, vacatur; (5) whether settlement was the result of a court's settlement or dispute resolution program; and (6) the harm to the movants were vacatur not granted.[17]  As demonstrated by the footnote accompanying this

---

[16] "Everyone in the courtroom seems to benefit from the settlement . . . .  Against these immediate and recognizable benefits, the Court must weigh the silent but important interests not represented in the courtroom: future litigants, the public as a whole, the development of the law, and the integrity of the judicial system. . . . However, where the loss to the public of eliminating precedent and its potential preclusive effect is slight and the benefits of settlement are great, vacatur is appropriate." *Id.*

[17] *See, e.g.*, *Green Valley*, 969 F.3d at 470 (factor 1); *Hartford*, 828 F.3d at 1336-37 (factors 1-5); *Major League Baseball*, 150 F.3d at 152 (factors 3, 6); *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, No. 3:15-CV-1041-J-34PDB, 2019 WL 10854446, at *2 (M.D. Fla. Aug. 6, 2019) (factors 1-2, 4-5); *McKinney*, 2010 WL 2510382 at *2-3 (factors 1, 6); *Calderon v. Hartford Life & Accident Ins. Co.*, No. 18-CV-331-NF-KHR, 2019 WL

list, not all factors are required or considered in each instance.  Rather, "[t]he precise application of this approach will vary case by case."  *Hartford*, 828 F.3d at 1336.

### C.  Standard on Appeal – Abuse of Discretion

In reviewing the bankruptcy court's denial of a Rule 60(b) motion, the appellate court reverses only for an abuse of discretion.  *See Amoco Oil*, 231 F.3d at 697; see also 10 Collier on Bankruptcy ¶ 9024.05 (noting the general rule in context of Fed. R. Bankr. P. 9024).  This review is much narrower than the merits appeal and typically involves consideration only of the order of denial, not the underlying judgment.  *Amoco Oil*, 231 F.3d at 697.  The bankruptcy court abuses its discretion where its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.  *Id.*; *see also Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (noting this abuse-of-discretion standard does not shield erroneous rulings of law, which are reviewed *de novo*).  "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."  *United States v. Hartley*, 34 F.4th 919, 928 (10th Cir. 2022) (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).  The existence of discretion "does not excuse a court's failure to exercise any discretion . . . ."  *Id.*

---

7596279, at *1 (D.N.M. Mar. 12, 2019) (factors 1-3); *McDonald v. City of Wichita*, 2017 WL 2959379, at *2-3 (D. Kan. July 11, 2017) (factors 1-2, 4-6); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, 2014 WL 524661, at *1 (D. Kan. Feb. 10, 2014) (factors 1-2, 4-5); *Welch v. Unum Life Ins. Co. of Am.*, 649 F. Supp. 2d 1220, 1227 (D. Kan. 2009) (factors 1, 6); *see also Nease v. State Farm Mut. Auto. Ins. Co.*, No. CIV-10-177-SPS, 2014 WL 6626430, at *1-3 (E.D. Okla. Nov. 21, 2014) (considering factors 1-3, 6 in denial of request for vacatur).

## II.     The Bankruptcy Court's Decision was an Abuse of Discretion

In this case, the bankruptcy court abused its discretion in three related, but distinct ways.  First, the court failed to consider the facts on which its exercise of discretion would rest.  Second, the court did not just place a "finger" on the scales in favor of the public interest; it granted so much weight to one aspect of that interest (the inherent value of the bankruptcy discharge) that vacatur of a judgment like this one could never be granted.  Finally, the court made clearly erroneous findings of fact regarding the nature and effect of the parties' settlement and the relief sought.

### A.     The Bankruptcy Court Failed to Fully Consider the Factors Presented by the Parties

As *Bancorp* explains, any equitable determination of the propriety of vacatur after settlement must weigh the public and judicial interests alongside the interests and justifications of the settling parties.  *See Bancorp*, 513 U.S. at 26-28.  Here, the bankruptcy court may have *heard* the parties' assertions of such interests, but it does not appear to have *considered* or weighed them.  (*See generally* ECF No. 7-1 at 548-61.)

As noted above, the parties asserted that the Bankruptcy Judgment had limited precedential value and was heavily fact-dependent; the parties' were facing years of further litigation and a potential retrial if the Bankruptcy Judgment was reversed; the continuing existence of the Bankruptcy Judgment and State Judgment were having an adverse impact on professionals whose livelihoods depended on their reputations; vacatur was essential to, and thus a condition precedent of, any settlement; while mediation was not court-ordered, the parties had utilized the services of a chapter 7 trustee; a global settlement allowed Renfrow to get a fraud judgment vacated that has resulted in her having "to keep working temporary jobs"; and absent vacatur, the case would continue to be litigated.  (*Id.* at 543-45, 553-59.)  The bankruptcy court rejected

outright any consideration of the contingent nature of the settlement.  (*Id.* at 555.)

Otherwise, the court made no findings as to the relevant factors argued by the parties, nor

did it give them any weight.  Considering that the Supreme Court has "laid out a balancing

approach in the 'equitable tradition of vacatur,'" *Hartford*, 828 F.3d at 1334 (quoting

*Bancorp*, 513 U.S. at 25), failing to weigh the parties' private interests is akin to leaving

half your test blank.   The bankruptcy court magnified this error by also refusing to

consider the public interests (*e.g.,* judicial efficiency, lack of precedential value) presented

by the parties.  As such, the undersigned finds the bankruptcy court abused its discretion

by refusing to consider "the facts upon which the exercise of its discretionary judgment is

based." *Hartley*, 34 F.4th at 928.

## B.     The Bankruptcy Court Elevated One Interest to Such an Extent as to Eliminate any Exercise of Discretion

What the bankruptcy court <u>did</u> consider, in both its decision and at hearing, was

an interest of the bankruptcy system itself.  At the hearing, Judge Michael suggested there

may be <u>no</u> situation in which exceptional circumstances could justify vacatur after

settlement in a case involving a discharge violation because of the harm vacatur would

cause the bankruptcy system.  (*Id.* at 560 (noting that he "will never sell out the

bankruptcy code or its structure for a particular settlement, period," and that he did not

believe that creditors could ever "buy their way out" of a discharge violation through

settlement).)  Judge Michael did nothing to clarify this finding in his order.  (*Id.* at 549

(finding, without allowing for exception, that vacating the decisions at issue "would

foment a harm on the bankruptcy system" as well as be "contrary to the public interests[,]

as it would send a message to parties found to have" violated "the discharge injunction . .

. that they may avoid being held accountable for or for having any record of their actions

remain intact as part of a negotiated settlement").)

Judge Michael may not have intended to imply a universal policy of refusing to vacate judgments after settlement in these instances—he did, after all, at least acknowledge the possibility of "exceptional circumstances" justifying vacatur. (*Id.* at 552-59.) But, from the reasoning outlined in his hearing decision and order, it is unclear whether he would *ever* find "exceptional circumstances" to exist in a case when creditors—found to have violated a discharge injunction—settle with debtors and request vacatur. This position is at odds with *Bancorp*, which explicikktly allows that such exceptional circumstances could exist. *See Bancorp*, 513 U.S. at 29. It is also at odds with this Court's preference for private settlement.[18] Thus, the bankruptcy court "abused its discretion by refusing to exercise its discretion properly" under the applicable standard.[19] *Hartley*, 34 F.4th at 933.

### C. The Bankruptcy Court Made Clearly Erroneous Findings

#### 1. Vacatur versus sealing or expunging the case

The bankruptcy court also erroneously found that vacating the Bankruptcy Judgment would expunge or erase it. In his finding of public harm, Judge Michael stated

---

[18] *See, e.g.*, https://www.oknd.uscourts.gov/alternative-dispute-resolution-program-pdf, setting out the various court-sponsored and non-court-sponsored ADR programs encouraged by this Court.

[19] Judge Michael's statements also indicated a belief that he could not, or would not, "reverse" the rulings of another bankruptcy judge. (*See* ECF No. 7-1 at 549 n.3 ("This Court expressly declines to vacate the findings and conclusions of one of its peers. Such matters fall squarely within the province of the appellate courts."); *see also id.* at 557 (positing that the parties were "in effect asking [him] to reverse" the Bankruptcy Judgment).) While a Rule 60 motion is typically brought before the judge who rendered the order, *Owens v. D.C.*, 631 F. Supp. 2d 48, 57 n.5 (D.D.C. 2009), that was not possible in this case. Judge Rasure retired on May 1, 2022, and the underlying adversary matter was then assigned to Judge Michael. (Bankr. N.D. Okla., No. 17-01027-M, ECF No. 182.) To the extent Judge Michael relied on an inability or refusal to reverse Judge Rasure's findings, this too was an abuse of discretion. *See Rio Grande*, 601 F.3d at 1128 ("error in significantly basing [a] denial of vacatur on [an] improper and irrelevant factor . . . ineluctably provides a strong indication that the district court abused its discretion").

that if vacatur were allowed, creditors found to have acted in violation of a debtor's discharge under 11 U.S.C. § 524 would be able to avoid "any record of their actions remain[ing] intact . . . ."[20]  (ECF No. 7-1 at 549 (emphasis added).)  These findings follow statements made at hearing where Judge Michael appeared to believe that the request for vacatur was really a request for him to reverse Judge Rasure's opinions and expunge the record.  (*Id.* at 556-57.)  To the extent the bankruptcy court relied on this understanding to support its finding that the interest of the public and the federal judiciary weighed against vacatur, such reliance was in error.  In their motion before the bankruptcy court, the parties merely requested the documents comprising the Bankruptcy Judgment be "vacate[d] and set aside."  (*Id.* at 545.)  Moreover, at hearing, when asked whether they wanted the bankruptcy court to "expunge the record," counsel for Defendants-Appellants clearly indicated that they were "[n]ot asking that the records be sealed or expunged," simply that "they be vacated."  (*Id.* at 556.)  Vacatur does not remove an opinion from public view in the same way that sealing the case or expunging the record would.  *See NASD Disp. Resol., Inc. v. Jud. Council*, 488 F.3d 1065, 1069 (9th Cir. 2007) (noting that, even if vacated, "the opinion of the district court will not be ripped from Federal Supplement 2d" and "will still be citable for its persuasive weight"); *McDonald*, 2017 WL 2959379, at *2 & n.10 ("Any later use of the decision as persuasive authority is not

---

[20] Judge Michael also stated creditors could "avoid being held accountable" for actions found to have violated the discharge (ECF No. 7-1 at 549), which would not be a correct statement in this case.  The measure of accountability adjudged appropriate by Judge Rasure was damages and vacatur of the State Judgment.  The settlement provides for the same vacatur and "financial compensation" to Renfrow, but with a certainty she will receive them—something not guaranteed if this case continues on appeal.  The parties may deny wrongdoing, and portions of their settlement are not publicly available, but it would be wrong to imply that there is no accountability or effect stemming from the to-be-vacated Bankruptcy Judgment.

prevented by this Court's vacatur as a condition of settlement," as "regardless of whether the judgment is vacated . . . , the Court's . . . decision will remain publicly available, on the District of Kansas website and on Westlaw and Lexis").

Thus, to the extent the bankruptcy court found vacatur to be against the public interest because it somehow wiped away *any* record of Judge Rasure's findings, such a belief was unsupported and erroneous.

### 2.   The nature and effect of the parties' agreement

Similarly, the bankruptcy court made a clearly erroneous factual finding when it determined that that "the arguments of counsel at the . . . hearing persuade the Court that the requirement that the [Bankruptcy Judgment] be vacated is a condition of settlement required by the Defendants, not the Plaintiff." (ECF No. 7-1 at 549 n.3.) There is no basis for this finding. Both parties filed the joint motion for indicative relief. (*Id.* at 545-46.) Both parties argued at hearing for the vacatur. (*Id.* at 553-59.) In fact, at the hearing, Renfrow's counsel emphasized that—to get the relief she most wanted—Renfrow needed a global settlement. (*Id.* at 553.) While her counsel may not "like it," she would finally get the relief she wanted "once this case is all dismissed." (*Id.* at 559.) Renfrow has reiterated this position on appeal. (ECF No. 15 at 5-6.)

The undersigned has reviewed the settlements provided *in camera* to the bankruptcy court and finds that vacatur of the Bankruptcy Judgment is a condition precedent required by all the parties who signed the settlement agreements. To the extent Judge Michael found otherwise, that finding was clearly erroneous.   Moreover, to the extent Judge Michael was, instead, trying to look beyond the parties' statements and determine what benefited a particular party—despite their statements to the contrary— this, too, would be clearly erroneous. The parties do not have a line-item veto over terms

of the settlement; they either have a global settlement that may be completed upon vacatur of the Bankruptcy Judgment, or they have no settlement and the appeals continue. Here, "[u]nlike *Bancorp*, . . . the victor in the [bankruptcy] court wanted a settlement as much as . . . the loser did." *Major League Baseball*, 150 F.3d at 152.

Considering the above, the undersigned finds the bankruptcy court abused its discretion in denying the motion for indicative relief.

## III.   The Parties Have Established Exceptional Circumstances Justifying Vacatur

Having determined that the bankruptcy court's decision was an abuse of discretion, the undersigned considers whether the parties have established sufficient "exceptional circumstances" under *Bancorp* and the case law discussed above. *See, e.g.*, *Hartford*, 828 F.3d at 1332, 1337 (finding lower court abused its discretion by misapplying *Bancorp*, finding exceptional circumstances, and ordering the underlying judgment vacated); *see also Rio Grande*, 601 F.3d at 1133 (finding abuse of discretion and remanding with directions to vacate the orders below). The Court finds such exceptional circumstances and holds that it would order vacatur of the Bankruptcy Judgment under 28 U.S.C. § 2106.

### A.   Precedential Value of the Bankruptcy Judgment

In their briefing, the parties argue one of the factors favoring vacatur is the relatively low precedential value of the Bankruptcy Judgment, particularly given the abrogated case law relied on in the *Memorandum Opinion* and the judgment's fact-intensive nature. (*See* ECF No. 12 at 22-23; ECF No. 15 at 7-11.) While this Court does not believe the decision to be of as little merit as the parties indicate, the Court agrees its limited future value weighs in favor of vacatur. This is particularly true where the judgment will retain some persuasive weight.

In *Bancorp*, the Supreme Court was asked to vacate a published opinion of the Ninth Circuit Court of Appeals.  513 U.S. at 20.  The Court determined that the public interest lay in upholding judicial <u>precedents</u>, which "are presumptively correct and valuable to the legal community as a whole."  *Id.* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).  Some courts have found that all inferior courts' opinions have this same high value to society and that such value would be diminished by vacatur.  *See, e.g.*, *Nease*, 2014 WL 6626430, at *2 (magistrate judge "not convinced that the order is devoid of any precedential value" where "[i]t is [publicly] available through Westlaw and Lexis and thus 'might be useful to future litigants' as persuasive authority" (quoting *Summit Fin. Res., L.P. v. Kathy's Gen. Store, Inc.*, No. CIV.A. 08-2145-CM, 2011 WL 3666607, at *2 (D. Kan. Aug. 22, 2011))).  In this case, the Court sees two reasons for rejecting such a rigid interpretation of *Bancorp*'s finding of public interest.

First, cases that have adopted this interpretation omit the distinction between precedential appellate opinions and persuasive decisions of lower courts.  *See N.M. v. JSS of Albuquerque, LLC (In re JSS of Albuquerque, LLC)*, No. 1:17-CV-00875-JCH-LF, 2019 WL 413529, at *5 n.5 (D.N.M. Feb. 1, 2019) ("trial court decisions bind no other court, and . . . bankruptcy court decisions only have persuasive authority over bankruptcy judges").  Thus, the undersigned does not see the public interest being as strongly implicated here—at least to the extent it was in *Bancorp*—where the opinions sought to be vacated have merely persuasive value.  Whether they are vacated or not, they retain some persuasive authority and will remain publicly available online for anyone who wishes to cite them for such.  *See McDonald*, 2017 WL 2959379, at *2 ("Any later use of

the decision as persuasive authority is not prevented by this Court's vacatur as a condition of settlement.").

Second, the value of the Bankruptcy Judgment is further undermined by the unique circumstances of this case.  As the parties point out, the 80-page *Memorandum Opinion* rested its civil contempt findings on a now-abrogated legal standard.  (*See* ECF No. 7-1 at 482 (finding contempt appropriate where the creditor "*intended the actions which were taken* in violation of the injunction," a standard rejected in *Taggart*, 139 S. Ct. at 1803-04).)  The *Order on Remand* reaffirmed the bankruptcy court's findings with additional analysis.  (*Id.* at 519-38.)  While there were other issues addressed in both orders, the jumbled nature of the ultimate decision—which contains admitted misstatements of the law (on top of any errors asserted in the related appeal)—lowers its future usefulness.

Finally, and again unique to this case, the Bankruptcy Judgment was incredibly dependent on the specific facts found by Judge Rasure and included her review of arguments made and evidence presented (and not presented) at the state court trial to decide that a state court jury erroneously awarded damages for pre-petition fraudulent transfers, in spite of jury instructions to the contrary.

The Bankruptcy Judgment is, therefore, a far cry from a final, published appellate opinion stating generally applicable principles of law.  In any event, it will continue to be accessible to the public and potentially persuasive.  *See Rio Grande*, 601 F.3d at 1133 ("since the district court's opinions will remain 'on the books' even if vacated, albeit without any preclusive effect, future courts and litigants will be able to consult their reasoning" (cleaned up) (quoting *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 354 (D.C. Cir. 1997))).  The public interest in preserving these particular decisions in this particular

case is, therefore, not strong—particularly in light of the weight of the other factors discussed below.[21]

## B.  Party and Judicial Efficiency & Whether Settlement was Court-Sponsored

The parties' arguments regarding judicial efficiency are also well taken.  (*See, e.g.*, ECF No. 12 at 24.)  This litigation has dragged on since 2016 and promises to drag on further if vacatur is denied.  The related merits appeal is before the undersigned in Case No. 21-cv-00228-CVE-SH, awaiting a report and recommendation.  Even if that report is soon entered, the parties will be entitled to an additional *de novo* review before Judge Eagan, *see* Fed. R. Civ. P. 72(b)(3), then an appeal by right to the Tenth Circuit, and potential discretionary review by the Supreme Court.  This is just the federal litigation.  The appeal of the State Judgment also remains pending before the Oklahoma Supreme Court.

While other judges might decide differently,[22] the Court finds judicial economy would be served in this specific case, particularly given the contingent nature of the settlement (discussed below) and the already-stated uncertainty as to whether the Bankruptcy Judgment will be affirmed, at least at this first-of-many-stages of appellate

---

[21] The undersigned has not given any special weight to the fact that Judge Rasure found Defendants-Appellants violated the bankruptcy discharge, whether they had a "full and fair consideration of the issues" before her (ECF No. 7-1 at 549), or whether her findings were correct.  The vacatur decision is not a review of the underlying judgment, *Amoco Oil*, 231 F.3d at 697, and is not based on assumptions about the merits of that judgment, *Bancorp*, 513 U.S. at 27.

[22] *See, e.g.*, *Nease*, 2014 WL 6626430, at *2 (as to "whether judicial economy would be served by vacating the order," the court found "it seems doubtful that allowing parties to obtain such post-judgment relief at the trial court level by settlement during pendency of appellate proceedings *does* promote judicial economy"); *Summit Fin. Res.*, 2011 WL 3666607, at *3 (while "vacatur will provide legal certainty and presumably save both parties the time and expense associated with litigating the current appeal . . . this would be true in nearly every case").

review (No. 21-cv-228, ECF No. 35).  While the Supreme Court was justifiably wary of any <u>systemic</u> efficiencies that would result from a policy favoring the wholesale vacatur of settlement-mooted opinions on appeal, it noted that the "judicial economies achieved by settlement <u>at the district-court level</u> are ordinarily much more extensive . . . ."  *Bancorp*, 513 U.S. at 28 (emphasis added).  This matter is both on appeal and at that district-court level, putting the economies much higher than *Bancorp*, if lower than they would have been earlier in the case.  The Court finds these judicial economies favor vacatur.  *See also Hartford*, 828 F.3d at 1337 ("the public interest is also served by settlements when previously committed judicial resources are made available to deal with other matters, advancing the efficiency of federal courts"); *Calderon*, 2019 WL 7596279, at *1 ("allowing settlement to move forward promotes a public interest in judicial efficiency"); *HR Tech.*, 2014 WL 524661, at *1 ("the settlement is conditioned on a vacatur, and a settlement would serve the interests of both parties and judicial efficiency in avoiding further protracted and costly litigation").

Moreover, settlement would also serve this Court's stated policy in favor of private resolution of disputes.  *See supra*, n.18.  Although the parties were not ordered into a settlement conference by this Court, they did seek out one of the District's Chapter 7 Trustees[23] to act as a mediator.

The undersigned, therefore, finds that both the public and private interests in judicial efficiency and this Court's settlement policies weigh slightly in favor of vacatur.

---

[23] *See* https://www.oknb.uscourts.gov/list-trustees.

### C.      Contingent Nature of Settlement & Parties' Mutual Agreement

Relatedly, the parties' joint agreement to a contingent settlement weighs in favor of granting the relief sought.  Vacatur may not be appropriate in all situations where parties make their settlement contingent upon, rather than in contemplation of, vacatur, but this Court finds it may be one of many factors leaning in favor of vacatur.

In *Bancorp*, the parties did not make their settlement contingent upon vacatur of the underlying judgment; instead, they were bringing a moot case to the Supreme Court. *Bancorp*, 513 U.S. at 20.  The movant was asking the Court to rule on a matter where no live case or controversy existed—to reach its hand back into a litigation that was no longer active and take action.  *See Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1245-46 (10th Cir. 2009) (when "circumstances change such that the plaintiff's legally cognizable interest in a case is extinguished" or "[w]hen it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot"). The movant had, in effect, voluntarily abandoned review.  *See Bancorp*, 513 U.S. at 29.  The Supreme Court found this attempt by a party to have its cake and eat it too, troubling.

Noting that equitable principles "have always been implicit in" the Court's vacatur determination, it stated "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 24.  "Where mootness results from settlement . . ., the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur."  *Id.* at 25.

The same principles are not implicated here.  The parties have not voluntarily forfeited their "legal remedy by the ordinary process of appeal"—at least not yet.  Vacatur

is a condition precedent to settlement for <u>both</u> parties.  Without it, the matter will continue down the ordinary path of appeal.

Nor does the undersigned agree with courts who have found that such a difference is only a matter of phrasing, or a draftsman's "sleight of hand." *See ATSI Commc'ns*, 547 F.3d at 113.  The Court has no reason to believe that the parties were willing to settle <u>without</u> vacatur of the Bankruptcy (or State) Judgment.  The decision to make vacatur a condition precedent of settlement was a decision of substance—and one not all litigants could stomach.  As the parties note, their settlement includes "financial compensation." For most litigants alleging they have been harmed, the best way to compensate for such harm is exactly that:  financial compensation.  And, for most litigants, the value of settlement also derives, at least in part, from its certainty—the certainty that a party will receive money, a release, or some other valuable consideration.  It is not at all clear that most parties would be willing to risk that certainty—or assured "financial compensation"—on what might feel like the vagaries of judges exercising their discretion, especially in a world where there is "a finger on the scale against vacatur."

Here, the parties have clearly judged the value of vacatur—which would provide relief from the continuing harm of the Bankruptcy and State Judgments—as worth that risk.  Considering this contingent settlement is not contrary to *Bancorp*, nor will it swallow the rule against blanket settlement-based vacaturs.  This factor has a role in the weighing of the equities.  *Hartford*, 828 F.3d at 1336 ("both parties to the settlement desire vacatur because settlement would otherwise be impossible," which weighs in favor of vacatur when coupled with the fact that settlement was prompted); *see also Zurich*, 2019 WL 10854446, at *2 (finding a contingent settlement supported vacatur); *HR Tech.*,

2014 WL 524661, at *1 (same).  As such, the Court finds the contingent nature of the parties' settlement tips in favor of vacatur.

### D.   Reputational Harm to the Parties

The reputational harm argued by the parties also weighs in favor of vacatur.  The parties maintain that both Renfrow and Defendants-Appellants have been harmed by the underlying decisions in this case and the State Case.[24]  (*See* ECF No. 12 at 21-22; ECF No. 15 at 6.)  Harm to the parties has, in many instances, been a factor courts have weighed in favor of vacatur.  *See Major League Baseball*, 150 F.3d at 152 (considering harm of non-vacatur to the parties and future litigation); *McKinney*, 2010 WL 2510382, at *3 (denying vacatur would jeopardize settlement agreement and deprive injured party of money needed for care); *Welch*, 649 F. Supp. 2d at 1227 (rejecting most bases for vacatur, but finding it appropriate where the plaintiff had been attempting to collect disability benefits for almost 10 years).

Here, the parties argue the Bankruptcy Judgment and the State Judgment have substantially harmed their reputations—and, in Plaintiff's case, have acted as a major hinderance to procuring permanent employment.  (ECF No. 12 at 21-22; ECF No. 15 at 6.)  Meanwhile, the relief they seek is limited.  While there is surely value in litigants being prevented from unilaterally wiping away adverse judgments that speak to their character or business practices, this value is upheld by the fact that any member of the public may still read Judge Rasure's findings on the parties' actions.  The Bankruptcy Judgment

---

[24] The vacatur of the State Judgment is not before this Court.  But, the settlement agreement requires vacatur of <u>all</u> judgments at issue—both Bankruptcy and State.  (ECF No. 7-1 at 540.)  Renfrow's ability to obtain a court-ordered vacatur of the State Judgment is at risk in this appeal, and she acknowledges that the global settlement is her only sure way to obtain that relief.  The Court, therefore, finds it appropriate to consider the harm Renfrow faces from the State Judgment in its weighing of the equities.

would simply be vacated.  Thus, the Court finds that the harm to the parties outweighs any public interest in non-vacatur.  *See McDonald*, 2017 WL 2959379, at *3 ("Although [damage to professional reputations from the order] alone would not support relief, combined with the conservation of resources, the conditional settlement, and the maintenance of the underlying removal of counsel,[25] the Court finds these circumstances to be exceptional, in the aggregate.").

The stain of a fraud judgment or a finding of civil contempt is not, alone, an "exceptional circumstance."  The same is true of the parties' settlement; its contingent nature; the relatively small future value of a fact-specific, non-precedential Bankruptcy Judgment; or the parties' joint request for vacatur, when viewed individually.  But combined, all tip in favor of vacatur, despite the finger on the scale that protects the "silent but important interests not represented in the courtroom."  As such, the undersigned finds the Bankruptcy Judgment should be vacated.

## THE APPROPRIATE RELIEF IN THIS CASE

In an ordinary case, the appellate court could easily and efficiently enter the relief appropriate here—an order vacating the Bankruptcy Judgment.  That is, one district judge (or circuit panel) would have final authority in the related appeals of the merits of the underlying judgment and the lower court's denial of the motion for indicative relief.  Here, however, the related cases have strayed down different paths.  In this appeal, the parties have consented to final judgment by the undersigned magistrate judge.  In the original

---

[25] In *McDonald*, the underlying order was one disqualifying counsel.  2017 WL 2959379, at *1.  In allowing vacatur of that order, the district court found value in the fact that the settlement would preserve the <u>intent</u> of that order—namely "removing the movant attorneys from the case."  *Id*. at *3.  Similarly, in this case, the result of the settlement would be to effectuate one of Judge Rasure's orders (to vacate the State Judgment), an order that is at risk in this appeal.

appeal, Case No. 21-cv-228, the parties have not.  Instead, that case has been referred to the undersigned to make a report and recommendation to Judge Eagan, subject to her *de novo* review.

Lacking authority to issue a final decision in the merits appeal, the undersigned finds it inappropriate to grant Plaintiff-Appellee's request to issue a final decision vacating the underlying Bankruptcy Judgment at issue before Judge Eagan.[26]  Instead, the undersigned will exercise the authority granted by the referral in Case No. 21-cv-228 and issue a report to Judge Eagan recommending vacatur of the Bankruptcy Judgment in that case.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's denial of the parties' *Joint Motion for Indicative Ruling Under Bankruptcy Rule 8008 & to Vacate and Set Aside Judgments* is **REVERSED**.  The undersigned will enter a report and recommendation in Case No. 21-cv-228-CVE-SH, recommending that District Judge Claire V. Eagan vacate the Bankruptcy Judgment, *i.e.,* the *Memorandum Opinion* and *Judgment*, dated April 23, 2019,[27] and the *Order on Remand*, dated May 7, 2021.[28]

**ORDERED** this 14th day of December, 2022.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[26] Similarly, because the bankruptcy court has been deprived of jurisdiction over the Bankruptcy Judgment by the pending appeal in Case No. 21-cv-228, the undersigned cannot grant Defendants-Appellants' request to remand with instructions to Judge Michael to vacate.

[27] ECF Nos. 101 & 102 of Case No. 17-01027-M.

[28] ECF No. 155 of Case No. 17-01027-M.